OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

City of Girard et al., Appellees, v. Trumbull County Budget
Commission et al., Appellants.
[Cite as Girard v. Trumbull Cty. Budget Comm. (1994),     Ohio
St.3d    .]
Taxation -- Allocation of undivided local government fund --
     Trumbull County Budget Commission may not allocate and
     apportion the undivided local government fund and
     undivided local government revenue assistance fund in 1992
     according to the alternate formula adopted on October 1,
     1990 but must use the formula properly adopted in 1983.
     (No. 93-1251 -- Submitted May 17, 1994 -- Decided
September 7, 1994.)
     Appeal from the Board of Tax Appeals, No. 91-K-1413.
     In 1983, the appellant Trumbull County Budget Commission
("commission") adopted a resolution providing for the
apportionment of the Trumbull County undivided local government
fund ("LGF") "for years 1984 through 1990, inclusive (and also
for years subsequent thereto unless revised, amended or
repealed in the manner provided in Section 5747.53, Ohio
Revised Code)."  The resolution set forth a method of
apportionment of the LGF as an alternative to the "statutory
formula" set forth in R.C. 5747.51 and 5747.52.
     In 1989, the commission also adopted an alternative method
of apportionment for the Trumbull County undivided local
government revenue assistance fund ("LGRAF") "using the same
percentage of distribution as for the [LGF] for the years 1989
and 1990 inclusive."
     On October 1, 1990, the commission adopted a resolution
which was intended to replace the resolution adopted in 1983.
This resolution provided for alternative methods of
apportioning the Trumbull County LGF and LGRAF "for the years
1991 through 2000, inclusive *** [and] subsequent to the year
2000 unless this Resolution is revised, amended or repealed in
the manner provided in Section 5747.53 and Section 5747.63,
Ohio Revised Code."
     Thereafter, the commission allocated the LGF and the LGRAF
for 1991 pursuant to the alternative methods adopted on October
1, 1990.  Appellees, the cities of Girard, Hubbard and Niles,

appealed the 1991 allocations to the Board of Tax Appeals ("BTA").  Those appeals (case Nos. 90-E-1482, 90-E-1494 and 90-J-1493) were consolidated and eventually dismissed by the BTA for lack of jurisdiction.

Prior to making apportionments for 1992, the commission, on August 7, 1991, sent a letter to each appellee informing it, respectively, of the amounts allocated from the LGF and LGRAF "to your Subdivision for the calendar year 1992."  (Emphasis added.)  This letter was received by Girard and Niles on August 12 and by Hubbard on August 13, 1991.  On September 17, 1991, the commission issued an Official Certificate of Estimated Resources ("official certificate") to each appellee for the budget year beginning January 1, 1992.  The official certificates were received by appellees on September 26, 1991.

On October 25, 1991, appellees filed their notice of appeal from the 1992 allocations with the BTA.  They alleged that the alternative formulas set forth in the October 1, 1990 resolution were improperly adopted "thirty days after the statutory deadline of September 1, 1990."

The BTA agreed and reversed and remanded the cause to the commission "to allocate the 1992 LGF and LGRAF pursuant to the alternate formula properly adopted in 1983."

The cause is now before this court upon an appeal as of right by appellants commission and Bazetta Township et al.

Dragelevich & Blair and J. Walter Dragelevich, for appellees.

Dennis Watkins, Trumbull County Prosecuting Attorney, James J. Misocky, Chief Counsel, and Patrick F. McCarthy, Assistant Prosecuting Attorney, for appellants.

Alice Robie Resnick, J.  The broad issue in this case is whether the commission may allocate and apportion the LGF and LGRAF in 1992 according to the alternative formula adopted on October 1, 1990.  In determining this issue, we must address three contentions raised by appellants:  (1) that appellees' appeal to the BTA filed on October 25, 1991, was untimely; (2) that a multi-year alternative formula for apportioning the LGF and LGRAF, adopted beyond the statutory deadline of September 1 for the year of its intended inception, is effective and applicable in subsequent years; and (3) that in failing to successfully appeal the October 1, 1990 adoption of the alternative formula to the BTA for the 1991 allocations, appellees waived their right to attack any procedural deficiencies in the adopting process in their appeal of the 1992 allocations.

I

We will first consider appellants' contention that appellees untimely appealed the 1992 allocations to the BTA. It is appellants' position that when appellees received the commission's letter dated August 7, 1991, they had thirty days from that time in which to perfect their appeal.  Under R.C. 5705.37, an appeal must be perfected within thirty days of receiving either the official certificate or notice, whichever occurs first.  Notice is defined in R.C. 5747.51(J).  The letter of August 7 was in "substantial compliance" with R.C. 5747.51(J), appellants argue, because it "alerted the subdivision as to their allocation under the formula."  Thus,

since this letter was received by appellees, respectively, on August 12 and August 13, 1991, their appeal filed with the BTA on October 25, 1991 was untimely.

We construe appellants' contention as a motion to dismiss for lack of subject-matter jurisdiction, which we deny.

R.C. 5705.37 provides, in relevant part, that:

"The taxing authority of any subdivision that is dissatisfied with any action of the county budget commission may, through its fiscal officer, appeal to the board of tax appeals within thirty days after the receipt by the subdivision of the official certificate or notice of the commission's action."

In Budget Comm. of Brown Cty. v. Georgetown (1986), 24 Ohio St.3d 33, 24 OBR 76, 492 N.E.2d 826, at the syllabus, we construed this language as follows:

"Pursuant to the express terms of R.C. 5705.37, the permissible time in which to perfect an appeal to the Board of Tax Appeals may be triggered by a subdivision's receipt of either the official certificate as set forth in R.C. 5705.37 or by receipt of notice as defined in R.C. 5747.51(J)."

Since appellants' appeal of the 1992 allocations was perfected within thirty days of receiving the official certificates but not within thirty days of receiving the commission's letter dated August 7, 1991, the determinative question is whether this letter constitutes "notice" as defined in R.C. 5747.51(J).

The relevant portion of R.C. 5747.51(J) provides that:

"Within ten days after the budget commission has made its apportionment, whether conducted pursuant to section 5747.51 or 5747.53 of the Revised Code, the auditor shall publish a list of the subdivisions and the amount each is to receive from the undivided local government fund and the percentage share of each subdivision, in a newspaper or newspapers of countywide circulation, and send a copy of such allocation to the tax commissioner.

"The county auditor shall also send by certified mail, return receipt requested, a copy of such allocation to the fiscal officer of each subdivision entitled to participate in the allocation of the undivided local government fund of the county. This copy shall constitute the official notice of the commission action referred to in section 5705.37 of the Revised Code." (Emphasis added.)

R.C. 5747.62(I) contains the same operative language applicable to LGRAF allocations.

The notice that is necessary to trigger the permissible time in which to perfect an appeal under R.C. 5705.37 is defined in R.C. 5747.51(J) and 5747.62(I) as a copy of the allocation required to be published and sent to the Tax Commissioner. Such allocation must include a list of the subdivisions, and the amount and percentage share that each subdivision is to receive from the fund being apportioned. Notice is required under these sections regardless of whether the statutory formula or an authorized alternative formula is utilized for the apportionment.

Neither R.C. 5747.51(J) nor 5747.62(I) provides for an alternative method in lieu of compliance with its mandatory notice requirements. Since the commission's letter dated

August 7, 1991, did not include a copy of the allocation specified as constituting notice under R.C. 5747.51(J), it did not trigger the appeal time under R.C. 5705.37 with respect to the LGF apportionment. Similarly, since the commission's letter also failed to include a copy of the allocation specified as constituting notice under R.C. 5747.62(I), it did not trigger the appeal time under R.C. 5705.37 with respect to the LGRAF apportionment. Further, even if we were to recognize that "substantial compliance" with the notice requirements of R.C. 5747.51(J) and/or 5747.62(I) could trigger the appeal time under R.C. 5705.37, such did not occur by virtue of the commission's August 7 letter. That letter did nothing more than apprise each subdivision of its own respective numerical share of each fund.

Accordingly, we find appellants' contention to be without merit.

II

Appellants' principal contention is that the alternative formula adopted on October 1, 1990 "for the years 1991 through 2000," even though adopted beyond September 1, 1990, is nevertheless viable for 1992. They argue that since the alternative formula was adopted before the September 1, 1991 deadline for the 1992 allocations, "no subdivision was prejudiced by the apparent untimeliness." Since the intent of adopting the alternative formula was to provide for a multi-year method of distribution, the untimely adoption in the first year should not serve to thwart "the intent of the subdivisions to utilize said formula in subsequent years." We disagree.

The LGF and the LGRAF were created as "a form of financial state support of the smaller governmental units existing in Ohio." Andover Twp. v. Ashtabula Cty. Budget Comm. (1977), 49 Ohio St.2d 171, 173, 3 O.O.3d 238, 239, 360 N.E.2d 690, 691. They consist of state-collected tax money credited under various provisions of the Revised Code. R.C. 5725.24, 5727.45, 5733.12, 5739.21, 5741.03, 5747.03 and 5747.61. Such funds are designed "to assist the county and its subdivisions in their current operations." Canton v. Stark Cty. Budget Comm. (1988), 40 Ohio St.3d 243, 533 N.E.2d 308, 309. "These funds are transferred by the state auditor to the several counties for distribution to the local subdivisions." Andover, supra, at 173-174, 3 O.O.3d at 239, 360 N.E.2d at 691.

It is the responsibility of each county's budget commission to determine the amount of each fund "needed by and to be apportioned to each subdivision for current operating expenses." R.C. 5747.51(B) and 5747.62(B). Both of these sections provide that this determination shall be made pursuant to the respective statutory formulas set forth therein, "unless the commission has provided" for an alternative formula. Under R.C. 5747.53(A) and 5747.63(A), "the county budget commission may provide for the apportionment of such fund under an alternative method or on a formula basis as authorized by this section. Such alternative method of apportionment shall have first been approved by all of the following governmental units ***."

R.C. 5705.27 provides, in pertinent part, that the commission "shall complete its work on or before the first day

of September, annually, unless for good cause the tax commissioner extends the time for completing the work."  In Shawnee Twp. v. Allen Cty. Budget Comm. (1991), 58 Ohio St.3d 14, 16, 567 N.E.2d 1007, 1010, we explained that the effect of failing to adopt an alternative formula by September 1 is to render the alternative formula nonexistent for the next year's allocations.  As the court of appeals explained in Englewood v. Montgomery Cty. Budget Comm. (1987), 39 Ohio App.3d 153, 155, 530 N.E.2d 924, 926-927:

"R.C. 5705.27 succinctly sets forth, in mandatory language, that a budget commission shall complete its work on or before September first of each year unless an extension is granted by the Tax Commissioner.  If no extension is granted, the budget commission must be prepared to invoke an alternate formula approved prior to September first, pursuant to R.C. 5747.53, or the statutory formula, set forth in R.C. 5747.51, comes into effect by operation of law.

"***

"Thus, a budget commission may adopt an alternate formula in lieu of the statutory method of distribution if the alternate formula is approved and ready to be implemented by the September first deadline."  (Emphasis sic.)

Appellants seek to distinguish the case sub judice from Shawnee Twp. and Englewood on two grounds.  The first ground, appellants assert, is that none of the participating subdivisions in this case suffered any prejudice, since "there was no delay in the receipt of LGF fund [sic] and LGRAF funds [sic] for the year 1992."

In support of their assertion, appellants rely exclusively on Troy v. Miami Cty. (1959), 168 Ohio St. 418, 7 O.O.2d 258, 155 N.E.2d 909.  In Troy, this court stated that the time limitation placed on the commission by R.C. 5705.27 to complete its work by September 1 was directory and not mandatory, "'at least where the rights of no person or class of persons would be prejudiced by the delay.'"  Id. at 430, 7 O.O.2d at 265, 155 N.E.2d at 916.  This discussion, however, took place within the context of a situation that is sui generis and should not be understood as having any precedential value beyond that situation.

The situation in Troy involved amendments to R.C. 5739.23 which were not effective until September 16, 1957.  Contained within those amendments was the language regarding the time and manner of apportioning the LGF.  On January 16, 1958, the commission allocated the 1958 LGF in accordance with the formula prescribed in the amendments.  This court upheld the commission's action notwithstanding R.C. 5705.27, finding that amended R.C. 5739.23 was applicable to distributions made in 1958.  In so doing, it was noted that amended R.C. 5739.23 was not effective until after the date established by R.C. 5705.27 for the commission to complete its work.  In order to give a prospective operation to amended R.C. 5739.23, it was necessary to find R.C. 5705.27's time prescription inapplicable.  Thus, we stated that "'[a]ll enactments imposing duties impossible of performance within the stipulated time have been declared directory.'"  Id. at 430, 7 O.O.2d at 265, 155 N.E.2d at 916.

The holding in Troy, therefore, is limited to the first year in which a prospective statutory provision for allocating

funds is enacted with an effective date subsequent to September 1.

The second ground on which appellants seek to distinguish Shawnee Twp. and Englewood is that those cases "do not directly address the issues involving a multiple year, alternate formula."  Under appellants' view, a multi-year alternative formula, which is invalidly adopted beyond the September 1 deadline in the year of its intended inception, is simply postponed until the following year.

Appellants misconstrue the import of failing to adopt an alternative formula by the September 1 deadline.  The deadline is a statutory precondition to the existence of a purported alternative method of allocation, regardless of its intended longevity.  As the BTA aptly explained, were we to find that a multi-year alternative formula, untimely adopted, could become effective in the year following its intended inception "without any further action by [the] county budget commission, the objectives of the participating subdivisions for the first year, which is clearly invalid, could be frustrated."  It would then be necessary to determine the intent of the various participating governmental units in approving the adoption of the alternative method formula.  Such a contractual analysis, however, is precisely what this court rejected in Andover, supra, at 174, 3 O.O.3d at 239, 360 N.E.2d at 692.  It is this very necessity of ascertaining the intent of the various governmental units that requires the adoption procedure to commence anew in the following year, especially since "the entire statutory scheme implies an annual determination of the method of distribution."  Id. at 175, 3 O.O.3d at 240, 360 N.E.2d at 692.

Accordingly, we find the alternative methods of apportioning the LGF and LGRAF adopted by the commission on October 1, 1990, to be invalid.  Since those methods never came into existence, they cannot be utilized in apportioning the LGF and LGRAF in 1992 or thereafter.

                                   III

Appellants' final contention is that any errors in the adopting process were waived by appellees "in their failure to raise them in their 1990 appeal to [the BTA]."

The doctrine of res judicata, whether claim preclusion or issue preclusion, may, under appropriate circumstances, be applied to decisions rendered by administrative bodies such as the BTA.  See Set Product, Inc. v. Bainbridge Twp. Bd. of Zoning Appeals (1987), 31 Ohio St.3d 260, 31 OBR 463, 510 N.E.2d 373; Superior's Brand Meats, Inc. v. Lindley (1980), 62 Ohio St.2d 133, 16 O.O.3d 150, 403 N.E.2d 996.

In S. Russell v. Geauga Cty. Budget Comm. (1984), 12 Ohio St.3d 126, 134, 12 OBR 167, 174, 465 N.E.2d 876, 883, however, we held that "pursuant to R.C. 5705.37, the taxing authority of a subdivision must file a notice of appeal to the Board of Tax Appeals in each year that an action taken by a county budget commission is questioned."  It would be inconsistent with this holding to apply claim preclusion to defeat appeals filed in successive years pursuant to R.C. 5705.37.

On the other hand, issue preclusion, or collateral estoppel, precludes the relitigation of an issue or issues "that have been actually and necessarily litigated and

determined in a prior action." Goodson v. McDonough Power Equip., Inc. (1983), 2 Ohio St.3d 193, 195, 2 OBR 732, 734, 443 N.E.2d 978, 981. See, also, Krahn v. Kinney (1989), 43 Ohio St.3d 103, 107, 538 N.E.2d 1058, 1062. A ruling by a tribunal, however, that it lacks jurisdiction is not a ruling on the merits of the claim and has no res judicata effect. State ex rel. Schneider v. N. Olmsted Bd. of Edn. (1988), 39 Ohio St.3d 281, 530 N.E.2d 206; Gibson v. Summers Constr. Co. (1955), 163 Ohio St. 220, 56 O.O. 223, 126 N.E.2d 326, paragraph three of the syllabus. See, also, Annotation, Res Judicata Effect of Judgment Dismissing Action, or Otherwise Denying Relief, for Lack of Jurisdiction or Venue (1956), 49 A.L.R.2d 1036. Such a ruling by its nature precludes any further inquiry into the issues comprising the merits of the claim.

Appellants do not contend, and the record does not reveal, that the issue of the untimely adoption of the alternative formula on October 1, 1990 was "actually and necessarily litigated and determined" in the consolidated appeal to the BTA from the 1991 allocations. Instead, appellants have stipulated that that case "was dismissed for lack of jurisdiction." Accordingly, we find appellants' third contention to be without merit.

In light of the foregoing, we affirm the decision of the Board of Tax Appeals.

Decision affirmed.

Moyer, C.J., A.W. Sweeney, Douglas, F.E. Sweeney and Pfeifer, JJ., concur.

Wright, J., dissents.

Wright, J., dissenting. In my view, the majority incorrectly holds that res judicata does not bar the instant litigation. The majority errs when it points to the BTA's dismissal of the 1991 appeals as the operative decision. I believe that appellees' failure to oppose the adoption of the alternative formulas at the October 1, 1990 budget commission hearing on the ground that the hearing occurred beyond when the commission was to complete its work bars, under res judicata, the instant appeals. Consequently, I respectfully dissent.

The commission had been allocating these funds under the formula adopted in 1983. In 1990, the commission began proceedings to replace this formula. After several meetings and approval by the requisite subdivisions, the commission, at its hearing on October 1, 1990 attended by two of the appellees, adopted the new alternative formulas. At this hearing, the commission voted to allocate for 1991 under these formulas.

Appellees appealed the 1991 LGF and LGRAF allocations to the BTA. However, on a motion by the commission, the BTA dismissed the appeals, because the cities had not filed copies of the notices of appeal with the budget commission, as required under R.C. 5705.37. In these appeals, appellees, inter alia, challenged the adoption of the alternative formulas.

The commission then allocated the 1992 LGF and LGRAF under the 1990 formulas, and appellees, again, appealed the allocations to the BTA.

According to Krahn v. Kinney (1989), 43 Ohio St.3d 103, 538 N.E.2d 1058, res judicata includes collateral estoppel, or issue preclusion. Krahn at 107, 538 N.E.2d at 1062, declares

the effect of this principle:

"Collateral estoppel precludes the relitigation of an issue that has been 'actually and necessarily litigated and determined in a prior action.'  Goodson v. McDonough Power Equipment, Inc. (1983), 2 Ohio St.3d 193, 195, 2 OBR 732, 734, 443 N.E.2d 978, 981, citing Whitehead [v. Gen. Tel. Co. (1969), 20 Ohio St. 2d 108, 49 O.O. 2d 435, 254 N.E.2d 10] ***."

In Superior's Brand Meats, Inc. v. Lindley (1980), 62 Ohio St.2d 133, 16 O.O. 3d 150, 403 N.E. 2d 996, syllabus, we applied collateral estoppel to administrative proceedings:

"Ordinarily, where an administrative proceeding is of a judicial nature and where the parties have had an ample opportunity to litigate the issues involved in the proceeding, the doctrine of collateral estoppel may be used to bar litigation of issues in a second administrative proceeding."

The Superior's Brand court held that the BTA acted in a judicial capacity because it issued notice, held a hearing, and afforded an opportunity for the introduction of evidence.

In Set Products, Inc. v. Bainbridge Twp. Bd. of Zoning Appeals (1987), 31 Ohio St.3d 260, 31 OBR 463, 510 N.E. 2d 373, we applied res judicata to a decision of a township board of zoning appeals.  In that case, Best Silica Company applied to the zoning board for transfer of a variance from Set Products to it and for a longer extension of the existing variance.  The zoning board granted the transfer but denied the extension.  This decision was not appealed.

One month later, Best Silica, Set Products, and H & R Investment Co. applied for a variance to last the entire useful life of the property.  The zoning board ruled that the earlier decision barred the new application under res judicata.  On appeal, the court of common pleas affirmed the board's decision, but the court of appeals reversed the common pleas court ruling and granted the variance.

We held that the zoning board must permit an applicant to present evidence in support of a variance claim and that the board's grant or denial of a variance is an exercise of a quasi-judicial power.  Thus, we reasoned, the board proceeding was of a judicial nature and the parties had an ample opportunity to litigate the issues involved in the proceeding.  Consequently, "[a]s the board's decision was not appealed, it became a final judgment on the merits, whether or not erroneous, and was res judicata to identical future applications. ***"  Id. at 263, 31 OBR at 465, 510 N.E.2d at 377.

In the instant case, R.C. 5747.51 and 5747.62 authorize the budget commission to allocate these funds.  According to division (B) of each statute: "*** The commission, after extending to the representatives of each subdivision an opportunity to be heard, under oath administered by any member of the commission, and considering all the facts and information presented to it by the auditor, shall determine the amount of the undivided local government [and local government revenue assistance] fund[s] needed by and to be apportioned to each subdivision for current operating expenses, as shown on the tax budget of the subdivision."

The budget commission's 1990 proceeding was of a judicial nature, and the appellees had ample opportunity to litigate

whether the commission timely adopted the 1990 formulas. Representatives of two of the appellees attended the October 1 hearing and heard the county prosecutor, a member of the commission, state that proper procedure had been followed in accomplishing an agreeable alternative method to apportion the funds. During this hearing, these appellees could have objected to the untimeliness of the commission's adoption of the formulas, since the commission conducted the hearing one month beyond when R.C. 5705.27 commanded the commission to complete its work. Indeed, Girard's attorney and Niles' mayor appeared at this hearing to express each city's objection to the formula.

Thus, this hearing presented the appellees with the opportunity to object to the untimeliness of adopting the formulas. Consequently, the commission's decision, not being successfully appealed, "became a final judgment on the merits, whether or not erroneous, and was res judicata to identical future applications." Set Products, supra, 31 Ohio St.3d at 263, 31 OBR at 465, 510 N.E.2d at 377.