[This opinion has been published in *Ohio Official Reports* at 86 Ohio St.3d 137.]

CITY OF LANCASTER, APPELLEE AND CROSS-APPELLANT, *v.* FAIRFIELD COUNTY BUDGET COMMISSION ET AL., APPELLANTS AND CROSS-APPELLEES.

[Cite as *Lancaster v. Fairfield Cty. Budget Comm*., 1999-Ohio-142.]

*Taxation—Income tax—R.C. 5747.53 and 5747.63—Apportioning Undivided Local Government Fund and Undivided Local Government Revenue Assistance Fund—Approval of alternative formula for apportioning monies in fundsGovernmental units that have not limited their approvals to a specific period of time need not thereafter annually reapprove the same formulas for use in subsequent years.*

Where, pursuant to R.C. 5747.53 and 5747.63, the requisite number of governmental units in a county have approved the use of alternative formulas for apportioning the monies in the Undivided Local Government Fund and Undivided Local Government Revenue Assistance Fund designated for that county, those governmental units that have not limited their approvals to a specific period of time need not thereafter annually reapprove the same formulas for use in subsequent years.

(No. 98-1059—Submitted April 14, 1999—Decided July 28, 1999.)

APPEAL and CROSS-APPEAL from the Board of Tax Appeals, Nos. 97-D-1172 and 97-D-1173.

———————————

{¶ 1} The Undivided Local Government Fund ("ULGF") and the Undivided Local Government Revenue Assistance Fund ("ULGRAF") are established by R.C. Chapter 5747 to provide state financial support to smaller governmental units in Ohio. The statutory scheme provides two options for distribution of monies in the funds: R.C. 5747.51 and 5747.62 provide "statutory" methods of distributing ULGF and ULGRAF funds to local governmental entities; and R.C. 5747.53 and 5747.63

authorize "alternative" methods of apportioning ULGF and ULGRAF allocations. The instant appeal concerns the distribution of ULGF and ULGRAF funds to governmental units located in Fairfield County for budget years 1998 and thereafter.

{¶ 2} On April 8, 1996, and pursuant to R.C. 5747.53 and 5747.63, appellant Fairfield County Budget Commission ("budget commission") approved a motion to adopt alternative formulas to allocate the county's ULGF and ULGRAF funds among the governmental units entitled to receive them. By September 1, 1996, the budget commission had obtained approval of these alternative formulas from the following governmental units: the Fairfield County Board of Commissioners, the city of Columbus ("Columbus"), as the "city, located wholly or partially in the county, with the greatest population,"[1] and a majority of the boards of township trustees and legislative authorities of municipal corporations in the county.

{¶ 3} The Columbus resolution which approved use of the alternative formulas for apportioning the ULGF and ULGRAF monies in Fairfield County, provided, however, that the approval was effective "beginning in 1996 for funds distributed in 1997, only." (Columbus City Ordinance 56X-96.) Columbus thereby limited its approval of use of the alternative formula for a specific period of time. The other governmental units did not limit their approvals. The budget commission allocated the 1997 funds under the formulas.

{¶ 4} On April 21, 1997, the Columbus City Council adopted an additional resolution approving the alternative formulas proposed by the county budget commission. The percentages determining distribution of 1998 funds to all affected local Fairfield County governmental units were unchanged from those approved in the earlier resolution. An explanatory statement accompanying the Columbus

---

1. See *Lancaster v. Fairfield Cty. Budget Comm.* (1998), 83 Ohio St.3d 242, 243, 699 N.E.2d 473, 474. See, also, pending H.B. No. 185, which would amend R.C. 5747.53 and 5747.63 to provide for approval by the "legislative authority of the city, located wholly or partially in the county, *with the greatest population residing in the county*." (Emphasis added.)

resolution noted that "[t]he legislation passed in 1996 was for distribution of taxes in 1997 only. The Fairfield County Auditor is requesting the alternate formula be adopted [by the city of Columbus] for years 1998 and after, thus eliminating the need to submit legislation annually." Accordingly, the April 21 resolution did not contain language purporting to limit the city's approval to a specific period of time. (Columbus City Ordinance 44X-97.) The budget commission, without obtaining any other approvals, thereafter allocated the 1998 funds under the alternative formulas.

{¶ 5} The city of Lancaster filed a notice of appeal with the BTA, challenging the 1998 allocations under the alternative formulas. Lancaster claimed that the alternative allocation formulas were not legally applicable to the 1998 allocations, in that the county budget commission had not obtained a valid approval for use of the alternative formulas in 1998 from all necessary governmental units. Lancaster sought application of the statutory method of allocation provided in R.C. 5747.51 and 5747.62.

{¶ 6} The BTA reversed the budget commission's allocations and remanded the case to the budget commission for it to allocate the funds under the statutory formulas of R.C. 5747.51 and 5747.62. The BTA ruled that, because Columbus had approved the formulas for 1997 only, the budget commission needed to obtain additional approvals from the other participants in the funds for subsequent years. The BTA further ruled that all alternative formulas terminate implicitly after one year and require annual approvals by the participants in the funds.

{¶ 7} The cause is before this court upon an appeal and cross-appeal as of right.

––––––––––––––––––

*John R. Varanese*, for appellee and cross-appellant.

*David L. Landefeld*, Fairfield County Prosecuting Attorney, and *Roy E. Hart,* Assistant Prosecuting Attorney, for appellants and cross-appellees, Fairfield County Budget Commission; Fairfield County Park District; County of Fairfield; Townships

of Amanda, Clearcreek, Greenfield, Hocking, Liberty, Madison, Richland, and Walnut; and Villages of Amanda, Baltimore, Bremen, Carroll, Lithopolis, Millersport, Pleasantville, Rushville, Stoutsville, Sugar Grove, Thurston, and West Rushville; and City of Pickerington.

*Teaford, Rich & Wheeler* and *James R. Gorry*, urging reversal for *amicus curiae,* Ohio County Auditors' Association.

*Michael T.* Callahan, Summit County Prosecuting Attorney, and *Austin B. Barnes III*, Assistant Prosecuting Attorney, urging reversal for *amici curiae,* Ohio Prosecuting Attorneys' Association and the County Commissioners' Association of Ohio.

_____

**MOYER, C.J.**

{¶ 8} This appeal presents two legal issues: (1) whether, pursuant to R.C. 5747.53 and 5747.63, the budget commission must secure annual approvals from all the participants in order to allocate the ULGF and the ULGRAF pursuant to the alternative formulas, and (2) whether the budget commission must secure approval from all participants for succeeding years if one of the participants in these funds initially limited its approval of the alternative formulas to one year, but thereafter approved use of an alternative formula without limiting it to a specific time period. We answer both of these interrelated inquiries in the negative.

{¶ 9} We described the local government fund established by R.C. Chapter 5747 in *Andover Twp. v. Ashtabula Cty. Budget Comm.* (1977), 49 Ohio St.2d 171, 173-174, 3 O.O.3d 238, 239, 360 N.E.2d 690, 691-692, as follows:

"The local government fund is a form of financial state support of the smaller governmental units existing in Ohio. It is composed of a portion of the state sales tax receipts and the state-collected tax on 'capital employed by financial institutions, and * * * by dealers in intangibles.' These funds are transferred by the state auditor to the several counties for distribution to the local subdivisions. A group of three county

4

officials, designated as the budget commission, then has the responsibility of allocating the local government fund. The budget commission may apportion such funds on a straight formula basis, the 'statutory method,' or by the 'alternative method,' which latter method allows the budget commission to consider any factor deemed to be 'appropriate and reliable,' in its sole discretion. The budget commission meets annually, on the first Monday in August, at which time it considers the budget submitted by each governmental subdivision."

{¶ 10} R.C. 5747.53 and 5747.63 provide for alternative formulas in nearly identical language:

"(A) In lieu of the method of apportionment of the undivided local government fund [undivided local government revenue assistance fund] of the county provided by section 5747.51 [5747.62] of the Revised Code, the county budget commission may provide for the apportionment of such fund under an alternative method or on a formula basis as authorized by this section. Such alternative method of apportionment shall have first been approved by all of the following government units: the board of county commissioners; the legislative authority of the city, located wholly or partially in the county, with the greatest population; and a majority of the boards of township trustees and legislative authorities of municipal corporations, located wholly or partially in the county, excluding the legislative authority of the city with the greatest population. * * * Any method of apportionment adopted and approved under this section may be revised, amended, or repealed in the same manner as it may be adopted and approved. In the event a method of apportionment adopted and approved under this section is repealed, the undivided local government fund [undivided local government revenue assistance fund] of the county shall be apportioned among the governmental units eligible to participate therein, commencing in the ensuing calendar year, under the apportionment provided in section 5747.52 [5747.62] of the Revised Code, unless a new method for apportionment of such fund is provided in the action of repeal.

"* * *

"(E) The actions of the budget commission taken pursuant to this section are final and may not be appealed to the board of tax appeals, except on issues of abuse of discretion and failure to comply with the formula." R.C. 5747.53; [R.C. 5747.63].

{¶ 11} The city of Lancaster argues that these statutes require participants to approve the alternative formula each year. The BTA accepted this argument. The county budget commission contends, to the contrary, that alternative formulas need not be formally approved on an annual basis.

{¶ 12} In requiring annual approvals, the BTA relied on *Andover*. In that case, the city of Ashtabula had annually approved the budget commission's alternative formula, originally approved in 1972, for each of the next three years. Ashtabula limited each approval to the current budget year, and the other participating governmental units apparently did the same. In 1976, however, Ashtabula declined to adopt the alternative formula. The court, on appeal, permitted Ashtabula to limit its approval to one-year periods. In *dictum*, the court concluded that "the entire statutory scheme implies an annual determination of the method of distribution." *Andover*, 49 Ohio St.2d at 175, 3 O.O.3d at 240, 360 N.E.2d at 692.

{¶ 13} Thereafter, in *Girard v. Trumbull Cty. Budget Comm.* (1994), 70 Ohio St.3d 187, 638 N.E.2d 67, the court, in explaining the importance of adopting an alternative formula by September 1, the statutory deadline, stated:

"It is this very necessity of ascertaining the intent of the various governmental units that requires the adoption procedure to commence anew in the following year, especially since 'the entire scheme implies an annual determination of the method of distribution.'" *Girard*, 70 Ohio St.3d at 192-193, 638 N.E.2d at 72, quoting *Andover*, 49 Ohio St.2d at 175, 3 O.O.3d at 240, 360 N.E.2d at 692.

{¶ 14} Upon additional review of the relevant statutes, we are convinced that R.C. 5747.53 and 5747.63 do not necessarily require adoption of an alternative formula by the necessary number of governmental units on an annual basis, and we

therefore disavow *dicta* in *Andover* and *Girard* to the contrary.

**{¶ 15}** The statutes prescribe an elaborate procedure, by which the budget commission proposes the formula and the specified governmental units must each approve the formula: the board of county commissioners, the legislative authority of the city with the greatest population, and a majority of the legislative authorities of the remaining participating governmental units. The formula fails if one of these units disapproves.

**{¶ 16}** The formula thereafter may be revised, amended, or repealed if done so in the same manner as adopted and approved. That is, these governmental units must agree to revise, amend, or repeal the formula. If the formula is repealed, the budget commission must apply the statutory formula for the ensuing calendar year, unless the governmental units adopt a new formula.

**{¶ 17}** Neither R.C. 5747.53 nor 5747.63 mentions annual approvals. The statutes set forth a procedure for adoption of a formula to allocate the funds by agreement of the participating governmental units. Using phrases usually applicable to legislation, these statutes authorize the governmental units to revise, amend, or repeal the formula in the same manner as they had adopted the original formula. If the formula is repealed, the budget commission is to allocate the funds under the statutory formula unless the governmental units adopt a new formula. Accordingly, under these statutes, and after initial and unlimited approval, additional action by the necessary governmental units is required only in order to revise, amend, repeal, or adopt a new formula.

**{¶ 18}** We therefore hold that where, pursuant to R.C. 5747.53 and 5747.63, the requisite number of governmental units in a county have approved the use of alternative formulas for apportioning the monies in the Undivided Local Government Fund and Undivided Local Government Revenue Assistance Fund designated for that county, those governmental units that have not limited their approvals to a specific period of time need not thereafter annually reapprove the same formulas for use in

subsequent years.

{¶ 19} We also reject Lancaster's argument that the budget commission's initial proposal was for adoption of alternative formulas to be used for the 1997 budget year only. It is true that the April 8, 1996 budget commission motion adopted alternative formulas "for apportioning county ULG[F] and ULGRA[F] funds beginning in 1996 for funds distributed in 1997." However, in including the language "beginning in 1996," the motion suggested that the formulas would continue to be followed after 1996. Thus, although the budget commission intended to distribute funds annually, we do not accept the claim that the commission intended to limit the life of the alternative formulas to one year only.

{¶ 20} In *Andover*, Justice William B. Brown, dissenting, observed that "R.C. 5705.27 and 5705.30, which refer to the annual *levy* of taxes and review of local budgets by the county budget commission, R.C. 5747.50, which guarantees an annual minimum of $150,000 for each county local government fund, and R.C. 5747.51, which sets up the statutory *alternative* to R.C. 5747.53, merely reflect the fact that most tax revenues are collected, and local budgets are usually drawn up, on an annual basis. The annual levy and collection of taxes should not affect the duration of an apportionment plan regulating *how*, and not when, funds are to be allocated." (Emphasis *sic*.) *Andover*, 49 Ohio St.2d at 176, 3 O.O.3d at 234-241, 360 N.E.2d at 693 (Brown, J., dissenting).

{¶ 21} We agree with this portion of Justice Brown's reasoning. Although the budgeting process for distribution of ULGF and ULGRAF funds is annual, approval of the alternative formula is not. The statutes authorizing the alternative formulas establish them as long-term resolutions in allocating these funds.

{¶ 22} Lancaster also urges us to affirm the decision of the BTA that the budget commission needed to obtain renewed approvals in 1997 from all the participating governmental units, even though their earlier approvals had not been restricted, based on the fact that Columbus had limited its approval to one year.

According to the BTA, Columbus should not have "the sole and exclusive annual right to determine on behalf of all the participating [governmental units] whether it would approve, disapprove or refuse to act with regard to the previously adopted alternative formula being applicable to one or more later years, while the other 'governmental units' involved had no such right or authority to make such an annual decision on their own behalf."

{¶ 23} We do not accept the BTA's reasoning. Columbus did not have the sole and exclusive annual right to determine approval of formulas. Under *Andover*, any or all of the governmental units could have limited their approvals to one year. However, they did not. The statutes do not set forth a procedure to approve these formulas annually, and nothing in the case law requires annual approval of the formula by all governmental units if one such unit has limited its approval to one year. *Andover* permits governmental units to restrict approvals to one year; it does not prevent the remaining participants from granting approvals not so restricted.

{¶ 24} The fact that one of the participants in these funds limits its approval of the alternative formulas to one year, does not trigger an obligation on the part of the budget commission to secure approval from the other participants for succeeding years. If the other participants grant unlimited approval, the budget commission should enforce their approval and allocate the funds without seeking their reapproval.

{¶ 25} The city of Lancaster alleged violations of R.C. 121.22, the Open Meetings Law, before the BTA. The BTA did not address those allegations in its opinion, and the city of Lancaster has failed to show how its Open Meetings Law claims are arguably within the subject-matter jurisdiction of the BTA. Cf. R.C. 5703.02(A). (The BTA has subject-matter jurisdiction to "hear and determine all appeals of questions of law and fact arising under the tax laws of this state in appeals from decisions, orders, determinations, or actions of any tax administrative agency established by the law of this state.") We therefore will not address them.

{¶ 26} In its cross-appeal, the city of Lancaster challenges the nature of the

order of remand issued by the BTA.  Our disposition of the primary appeal renders this cross-appeal moot.

{¶ 27} For the foregoing reasons, the decision of the Board of Tax Appeals is reversed.

*Decision reversed.*

DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____