CITY OF REYNOLDSBURG, APPELLEE, *v.* LICKING COUNTY
BUDGET COMMISSION ET AL., APPELLANTS.

[Cite as *Reynoldsburg v. Licking Cty. Budget Comm.,*
104 Ohio St.3d 453, 2004-Ohio-6773.]

(No. 2003–0414—Submitted September 14, 2004—Decided December 17, 2004.)

———————

FRANCIS E. SWEENEY, SR., J.

{¶ 1} This case is a consolidation of two separate groups of cases decided by the Board of Tax Appeals ("BTA"). All the cases were brought by the city of Reynoldsburg, appellee, challenging the Licking County Budget Commission's distribution of two local government funds: the Undivided Local Government Fund ("ULGF") and the Undivided Local Government Revenue Assistance Fund ("ULGRAF"). The appellants are the Licking County Budget Commission and all the other subdivisions in Licking County entitled to share in the distribution of the ULGF and ULGRAF.[1]

{¶ 2} In the first group of cases, appellees had challenged the distribution of these funds for years 1997–2001. In the second group, appellees had challenged the distribution of these funds for 2002. These cases were originally filed with the BTA as four separate appeals challenging the distribution of funds for years 1997 and 1998. Each appeal challenged the distribution of one of the funds for each year. The BTA decided all four appeals in Reynoldsburg's favor and limited its decision to whether the formula method utilized for distribution of these funds needed to be voted on annually by all of the affected governmental entities.

{¶ 3} The BTA's decision was appealed to this court. We reversed, without opinion, on the authority of *Lancaster v. Fairfield Cty. Budget Comm.* (1999), 86 Ohio St.3d 137, 712 N.E.2d 719 (which held that when participating subdivisions have not placed any time limits on their approval of an alternative method, they need not give their approval to the same alternative method each year thereafter). *Reynoldsburg v. Licking Cty. Budget Comm.* (1999), 86 Ohio St.3d 559, 715 N.E.2d 1143.

{¶ 4} Upon remand, the budget commission filed a stipulation stating that Reynoldsburg was entitled to participate in the county's alternative method under the ULGF and ULGRAF for distribution years 1997 and 1998. At the same time, the budget commission moved the BTA to remand the matter to the budget commission, with instructions to fit Reynoldsburg into the alternative method so it could share in the funds for the distribution years 1997 and 1998. Reynoldsburg neither signed the stipulation nor contested the motion. In 2000, the BTA granted the motion and remanded, with orders to (a) allocate Reynoldsburg a share of the local government funds for distribution years 1997 and 1998 and (b) incorporate Reynoldsburg as a participant "under the County's alternate ULGF method and its alternate ULGRAF formula."

{¶ 5} In compliance with the remand order, in 2001, the budget commission made an allocation for Reynoldsburg. However, rather than merely allocating amounts under the alternative formulas for distribution years 1997 and 1998 as instructed by the BTA, the budget commission, sua sponte, also allocated

---

1. For ease of discussion, appellants are collectively called the "budget commission."

amounts to Reynoldsburg for distribution years 1999, 2000, and 2001. Reynoldsburg filed appeals with the BTA from the allocations of the budget commission, attempting to challenge the budget commission's distributions for the years 1997–2001.

{¶ 6} Reynoldsburg had not filed appeals with the BTA following the budget commission's allocations in each of the distribution years 1999, 2000, and 2001. However, Reynoldsburg did file timely appeals with the BTA challenging the budget commission's original ULGF and ULGRAF allocations for the distribution year 2002. For distribution year 2002, Reynoldsburg contended that the budget commission failed to allocate the two funds according to the statutory method or, in the alternative, that the budget commission erred in calculating Reynoldsburg's share under the alternative formula.

{¶ 7} The BTA found that the budget commission had not adopted the alternative method for allocating ULGF in a timely manner because the budget commission did not vote to adopt the alternative method of distribution for the ULGF until after the September 1, 1972 deadline for approving distributions for 1973, making the 1973 and all subsequent alternative methods of distribution a nullity. The BTA further found that because the 1972 alternative distribution method was a nullity, the statutory formula should have been used to allocate funds during the years in question.

{¶ 8} Legislation distributing the ULGRAF did not become effective until July 1, 1989. Am.Sub.H.B. No. 111, 143 Ohio Laws, Part II, 2351, 2630. The legislation gave budget commissions 60 days after the effective date to determine the manner in which the ULGRAF was to be distributed for the last six months of 1989. Id. at 2827. The BTA found that the budget commission did not adopt the alternative method for the ULGRAF until its meeting of October 6, 1989, which was after the deadline set by the General Assembly for 1989 ULGRAF distribution. Id. The ULGRAF alternative method adopted by the budget commission in 1989 has been used ever since.

{¶ 9} Neither of the alternative methods approved by the budget commission in 1973 or 1989 contained a specified starting date. The ULGF distributions made in 1973 and the ULGRAF distributions made by the budget commission for the second half of 1989 and 1990 are not being contested. What is contested is the continuing use of the alternative methods by the budget commission during the ensuing years. Reynoldsburg first filed a budget with the budget commission in 1996 for distribution year 1997 and has filed a budget each year since.

{¶ 10} In a consolidated decision applicable to both groups of cases, the BTA determined that the budget commission did not adopt either of the alternative methods for the funds in a timely manner. As a result, the BTA found that the alternative methods used by the budget commission to distribute the ULGF and

ULGRAF were invalid for all ensuing years and that therefore the funds should have been distributed using the statutory method.

{¶ 11} This cause is now before the court upon an appeal as of right.

{¶ 12} The ULGF and the ULGRAF are established by R.C. Chapter 5747 to provide state financial support to smaller governmental units in the state. *Lancaster v. Fairfield Cty. Budget Comm.*, 86 Ohio St.3d 137, 712 N.E.2d 719. Monies for these funds are collected by the state from such taxes as the sales tax, use tax, dealer-in-intangibles tax, public utility tax, income tax, and the franchise tax for the financial support of local government units. See R.C. 5739.21, 5741.03, 5725.24, 5727.45, 5727.84, 5747.03, and 5733.12. The state disburses monies to each county and, in turn, the county's budget commission determines the amount to be distributed to each eligible local subdivision in the county.

{¶ 13} Basically, there are two methods utilized by a county budget commission to distribute the funds: (1) the statutory method delineated in R.C. 5747.51 and 5747.62 and (2) the alternative-formula method delineated in R.C. 5747.53 and 5747.63. If no action is taken by the budget commission, the funds are distributed by the statutory method. However, if the budget commission is able to secure the approval of the necessary government units, it may adopt an alternative formula that sets forth an agreed-upon method or percentage for the distribution of the funds to each governmental unit.

{¶ 14} The procedure for a budget commission to adopt an alternative method is found in R.C. 5747.53 (ULGF) and R.C. 5747.63 (ULGRAF). Because the procedure for adoption of an alternative method is essentially the same for both the ULGF and ULGRAF, reference will be made only to R.C. 5747.53(B), which provides:

{¶ 15} "[T]he county budget commission may provide for the apportionment of the fund under an alternative method or on a formula basis as authorized by this section.

{¶ 16} "* * * [T]he alternative method of apportionment shall have first been approved by all of the following governmental units: the board of county commissioners; the legislative authority of the city, located wholly or partially in the county, with the greatest population; and a majority of the boards of township trustees and legislative authorities of municipal corporations, located wholly or partially in the county, excluding the legislative authority of the city, located wholly or partially in the county, with the greatest population."

{¶ 17} Another relevant statute is R.C. 5705.27, which provides:

{¶ 18} "The [budget] commission shall meet at the office of the county auditor in each county on the first Monday in February and on the first Monday in August, annually, and shall complete its work on or before the first day of

September, annually, unless for good cause the tax commissioner extends the time for completing the work."

{¶ 19} Appellants contend that alternative methods need not be adopted and approved by September 1 of any specific year unless the adopting language makes the alternative method applicable to a year for which the approval date has passed. Since the budget commission did not adopt that kind of retroactive alternative method, appellants contend that the two alternative methods are still valid. However, Reynoldsburg asserts that the budget commission did not adopt the ULGF and ULGRAF alternative methods in a timely manner in 1972 and 1989, and so those methods remain invalid today.

{¶ 20} Three prior decisions guide our decision. In *Andover Twp. v. Ashtabula Cty. Budget Comm.* (1977), 49 Ohio St.2d 171, 3 O.O.3d 238, 360 N.E.2d 690, the city of Ashtabula approved an alternative method for distribution of the ULGF only one year at a time. Thus, the county budget commission needed Ashtabula's approval each year to implement the alternative method.[2] In 1976, Ashtabula declined to approve the alternative method, and the budget commission allocated the funds under the statutory method. The Ashtabula County townships that appealed from the decision of the budget commission contended that once the alternative method had been adopted, it could be amended or adopted only in the same manner in which it had been originally adopted and approved. One of the contentions raised by the townships was that adoption of the alternative method by the various governmental units constituted a contract. We rejected the townships' attempt to apply contract law and determined that the city of Ashtabula was not indefinitely locked into the alternative method "when it has expressly limited its participation in that method to a definite period of time." Id., 49 Ohio St.2d at 174–175, 3 O.O.3d 238, 360 N.E.2d 690.

{¶ 21} In *Girard v. Trumbull Cty. Budget Comm.* (1994), 70 Ohio St.3d 187, 638 N.E.2d 67, we considered the effect of a multi-year alternative method that was adopted on October 1, 1990, after the September 1, 1990 statutory deadline for distribution year 1991. The resolution adopting the alternative method provided that it was "for the years 1991 through 2000, inclusive." Id., 70 Ohio St.3d at 187, 638 N.E.2d 67. The budget commission, while admitting that the alternative method was not valid for distribution year 1991, argued that it should be valid for distribution years 1992–2000. We disagreed, holding, "The [September 1] deadline is a statutory precondition to the existence of a purported alternative method of allocation, regardless of its intended longevity." Id., 70 Ohio St.3d at 192, 638 N.E.2d 67. The court, citing the BTA's reasoning, stated that if the alternative method became effective, " 'the objectives of the participat-

---

2. Apparently, the approvals of the other governmental units were not limited to any time period.

ing subdivisions for the first year [1991], which is clearly invalid, could be frustrated.'" Id. The court further noted: "It would then be necessary to determine the intent of the various participating governmental units in approving the adoption of the alternative method formula. Such a contractual analysis, however, is precisely what this court rejected in *Andover* * * *." Id.

{¶ 22} In *Lancaster v. Fairfield Cty. Budget Comm.*, 86 Ohio St.3d 137, 712 N.E.2d 719, the Fairfield County Budget Commission had obtained approval from the necessary subdivisions to use an alternative method. However, the approval granted by the city of Columbus provided that it was effective "beginning in 1996 for funds distributed in 1997, only." Id. at 138, 712 N.E.2d 719. None of the other subdivisions had limited their approvals. For 1998, the distribution percentages remained the same as they were for 1997; however, Columbus's approval for 1998 did not contain language purporting to limit the city's approval to a specific time. Lancaster contended that the alternative methods were not valid for the 1998 distribution because the other necessary subdivisions had not given their approval. Thus, Lancaster argued that each participant had to approve the alternative methods each year.

{¶ 23} *Lancaster* presented this court with two issues: (1) whether R.C. 5747.53 and R.C. 5747.63 required the budget commission to secure annual approvals of all the necessary subdivisions in order to use the alternative method of apportionment and (2) whether the budget commission must secure approval from all participants for succeeding years if one of the necessary participants had originally limited its participation to one year but thereafter had given its approval without limiting the approval to a specific period.

{¶ 24} As to the first issue, we held that when the required subdivisions had given their approval to the alternative method and the approvals had not been limited to a specific time, a budget commission did not need to thereafter annually obtain reapproval of that alternative method for subsequent years.

{¶ 25} As to the second issue, we held that even if one of the subdivisions had limited its approval to one year, that fact did not trigger an obligation on the part of the budget commission to secure approval for ensuing years from the participants that had not time-limited their approval. Specifically, we stated, "If the other participants grant unlimited approval, the budget commission should enforce their approval and allocate the funds without seeking their reapproval." Id., 86 Ohio St.3d at 143, 712 N.E.2d 719. Thus, subdivisions can either restrict their approval of an alternative method to a given time, or they can grant unrestricted approval.

{¶ 26} In *Lancaster*, this court reconsidered its earlier suggestion that approval of the alternative method was an annual requirement, stating, "Upon additional review of the relevant statutes, we are convinced that R.C. 5747.53 and R.C.

5747.63 do not necessarily require adoption of an alternative formula by the necessary number of governmental units on an annual basis, and we therefore disavow *dicta* in *Andover* and *Girard* to the contrary." Id., 86 Ohio St.3d at 141, 712 N.E.2d 719.

{¶ 27} As a result of *Lancaster,* it is clear that if an alternative method is validly adopted by a budget commission based on unrestricted approvals, it remains in effect, and "additional action by the necessary governmental units is required only in order to revise, amend, repeal, or adopt a new formula." Id., 86 Ohio St.3d at 142, 712 N.E.2d 719.

{¶ 28} The specific question presented by this case is whether the budget commission's approval of the alternative methods after the September 1 deadline affected the validity of those alternative methods for the ensuing years. Under the facts of this case, the alternative methods for the ULGF and ULGRAF were not approved until after the September 1 deadline for their use in distributing the funds in the following year. However, unlike in *Girard,* neither of the alternative methods adopted by the budget commission contained any time limitations requiring their distribution to start in a year for which the approval time had passed. While the action of the budget commission was too late to permit use of the alternative formula for distributing the ULGF for 1973 or the ULGRAF for the second half of 1989 or 1990, the alternative formulas remained valid for fund distributions in subsequent years. Once an alternative method that has no time limits is approved, it remains in force for ensuing years until it is revised, amended, or repealed pursuant to statute. *Lancaster,* 86 Ohio St.3d 137, 712 N.E.2d 719. The alternative methods adopted by the budget commission in 1972 and 1989 remain in force for use in distributing the ULGF and the ULGRAF until they are revised, amended, or repealed pursuant to statute. Therefore, the budget commission's use of the alternative methods to distribute the ULGF and ULGRAF for distribution years 1997, 1998, and 2002 was proper.

{¶ 29} The appellants also contend that the BTA had no jurisdiction over the distribution years 1999, 2000, and 2001 because no appeals were filed with the BTA for those years. We agree.

{¶ 30} Without deciding whether the BTA's remand to the budget commission to include Reynoldsburg in the alternative formulas was proper, it is clear that the budget commission exceeded its authority following the remand. Pursuant to the stipulation accepted by the BTA, the budget commission was instructed to allocate funds to Reynoldsburg for distribution years 1997 and 1998 only. When the budget commission allocated funds for 1999, 2000, and 2001, it not only exceeded the terms of the remand order, it acted concerning distribution years for which no appeal had been filed with the BTA. Reynoldsburg did not file any notices of appeal with the BTA at the time the budget commission made its

original allocations for all of the subdivisions in the county for distribution years 1999, 2000, and 2001.

{¶ 31} In *South Russell v. Geauga Cty. Budget Comm.* (1984), 12 Ohio St.3d 126, 134, 12 OBR 167, 465 N.E.2d 876, we held that under R.C. 5705.37, which governs appeals to the BTA, "the taxing authority of a subdivision must file a notice of appeal to the Board of Tax Appeals in each year that an action taken by a county budget commission is questioned." Reynoldsburg cannot now appeal, after the fact, allocations that neither the BTA nor the budget commission was authorized to consider. Timely appeals were filed for distribution years 1997, 1998, and 2002. Since no timely appeals were filed for distribution years 1999, 2000, and 2001, the BTA did not have jurisdiction over Reynoldsburg's challenges to the budget commission's actions for those years.

{¶ 32} As a result of our decision, we find it unnecessary to discuss the remaining arguments raised by appellants. However, because the BTA's decision did not address Reynoldsburg's contention that the budget commission's method of allocation of a share of the funds to Reynoldsburg for distribution years 1997, 1998, and 2002 was improper under *Buckeye Lake v. Licking Cty. Budget Comm.* (1986), 21 Ohio St.3d 12, 21 OBR 275, 487 N.E.2d 294, we remand that issue to the BTA.

{¶ 33} The decision of the BTA is unreasonable and unlawful, and, therefore, we reverse it and remand the cause for further action consistent with this opinion.

Decision reversed
and cause remanded.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON and O'DONNELL, JJ., concur.

O'CONNOR, J., concurs as to years 1997 and 1998 only.

---

Rich & Crites & Wesp and James R. Gorry; Robert L. Becker, Licking County Prosecuting Attorney, and Dennis Dove, Assistant Prosecuting Attorney, for appellants.

Porter, Wright, Morris & Arthur, Nicholas M.J. Ray, Craig R. Carlson, and L. Bradfield Hughes; William F. Underwood, Reynoldsburg City Attorney, for appellee.