OPINION
{¶ 1} Plaintiffs-appellants, Delores E. Satow, et al.,[1] appeal a decision of the Columbiana County Common Pleas Court granting summary judgment in favor of defendants-appellees, Columbiana County Budget Commission, et al.[2]
 {¶ 2} R.C. Chapter 5457 established the Undivided Local Government Fund (ULGF) and Undivided Local Government Revenue Assistance Fund (ULGRAF) to receive certain state tax revenues which are then transferred to the counties for distribution to their local subdivisions. E.Liverpool v. Columbiana Cty. Budget Comm. (2000), 90 Ohio St.3d 269, 270,737 N.E.2d 44. A county budget commission then has the responsibility of allocating those funds to the various local subdivisions. R.C. 5705.27 et seq. The commission has two options to distribute the funds: (1) the statutory method under R.C. 5747.51 and 5747.62 or (2) the alternative method of R.C. 5747.53 and 5747.63. E. Liverpool, supra. Employing the statutory method involves a hearing in order to receive information from the county auditor on the annual tax budgets and estimates for the local subdivisions, R.C. 5747.51(B) and 5747.62(B), and then applying a complex formula set forth in subsequent subsections. Adoption of the alternative method, the method at issue in this case, required the approval of three entities: (1) the county board of commissioners, (2) the legislative authority of the city with the greatest population, and (3) a majority of the legislative authorities of the remaining political subdivisions, other than the city with the greatest population. Lancaster v. FairfieldCty. Budget Comm. (1999), 86 Ohio St.3d 137, 141, 712 N.E.2d 719. Based on this method, the City of East Liverpool (East Liverpool) — Columbiana County's largest city with 12 percent of the county's population — was able to secure a higher percentage of the funds. E. Liverpool v.Columbiana Cty. Budget Comm., 105 Ohio St.3d 410, 2005-Ohio-2283,827 N.E.2d 310, at ¶ 12.
 {¶ 3} In a settlement of an appeal instituted by East Liverpool, a majority of the Columbiana County political subdivisions, the Columbiana County Board of Commissioners, and the Columbiana County Budget Commission (CCBC) adopted and approved an alternate method of apportioning ULGF and ULGRAF money for 1990 and thereafter (1990 Alternate Formula).[3] From 1991 through 1997, the CCBC apportioned and the county auditor and treasurer distributed money from ULGF and ULGRAF in Columbiana County according to the 1990 Alternate Formula.
 {¶ 4} Effective August 29, 2002, the General Assembly amended R.C. 5747.53 and 5747.63 to allow ULGF and ULGRAF money "to be distributed among subdivisions under an alternative apportionment scheme without the approval of the largest municipal corporation in the county." Title to 2002 Sub. H.B. No. 329. Pursuant to R.C. 5747.53(C) and 5747.63(C) as amended by that act, "the legislative authorities of two or more political subdivisions that together have the majority of the county's total population may now adopt resolutions eliminating the requirement that the legislative authority of the largest city of that county approve a ULGF or ULGRAF alternative apportionment method for the next year's distribution of funds." State ex rel. Satow v. Gausse-Milliken,98 Ohio St.3d 479, 2003-Ohio-2074, 786 N.E.2d 1289, at ¶ 6.
 {¶ 5} In August 2002, following the enactment of H.B. 329, a majority of the political subdivisions of Columbiana County, representing 70.91 percent of the county's population, passed resolutions to approve a new alternate formula for the 2003 ULFG and ULGRAF distributions (2003 Alternate Formula), and to eliminate the requirement that East Liverpool approve the alternate formula. The new 2003 alternate formula is based on population. Columbiana County receives 50 percent of the funds, as provided by R.C. 5747.51(H). Each subdivision then receives a base amount of $15,000, and the remaining funds are distributed pro rata among all the subdivisions based on population. Under the new alternate formula, East Liverpool, as the largest city in Columbiana County, still receives more funds than any other subdivision in the county.
 {¶ 6} Following the CCBC's adoption of the 2003 Alternate Formula, East Liverpool appealed to the BTA. The parties then agreed to waive any hearing to permit the BTA to decide the merits upon the record and the legal arguments submitted in their briefs. Upon review, the BTA found that the CCBC "acted properly in adopting and approving [the 2003 Alternate Formula] according to the provisions of R.C. 5747.53 and 5747.63, as amended by H.B. 329, eff. August 29, 2002." Accordingly, the BTA affirmed the CCBC's allocation of the 2003 ULGF and ULGRAF. East Liverpool then appealed the BTA's decision to the Ohio Supreme Court. On May 25, 2005, the Ohio Supreme Court affirmed the BTA's decision and held: (1) that the CCBC only needed to verify that the necessary governmental units had approved the proposed alternative method before the statutory deadline, and did not need to hear evidence of East Liverpool's financial need; (2) that the CCBC properly followed the alternative method for allocating ULGF and ULGRAF dollars to the political subdivisions; and (3) that the General Assembly intended the single time extension to apply to all actions required to adopt the alternative method of apportionment. E. Liverpool v. Columbiana Cty.Budget Comm., 105 Ohio St.3d 410, 2005-Ohio-2283, 827 N.E.2d 310.
 {¶ 7} On January 23, 2003, East Liverpool filed an action for a writ of mandamus in the Ohio Supreme Court challenging the apportionment and distribution of the 2002 ULGF and ULGRAF money according to the 2003 Alternate Formula and instead urged that the funds be allocated and distributed according to the 1990 Alternate Formula. East Liverpool also sought a determination of the constitutionality of 2002 Sub. H.B. No. 329. On May 7, 2003, the Court dismissed East Liverpool's complaint holding that it had an adequate remedy at law for challenging the constitutional sufficiency of H.B. 329 by an action for declaratory judgment and prohibitory injunction. State ex rel. Satow v.Gausse-Milliken, 98 Ohio St.3d 479, 2003-Ohio-2074, 786 N.E.2d 1289.
 {¶ 8} On May 30, 2003, East Liverpool filed suit in Columbiana County Common Pleas Court challenging the constitutionality of H.B. 329. The complaint set forth four constitutional claims. Count I was a facial challenge to the constitutionality of H.B. 329 on equal protections grounds. Count II and III were "as applied" challenges that contend that H.B. 329, as applied by appellees in adopting the 2003 Alternate Formula violates Section 28, Article II of the Ohio Constitution because it allegedly "impairs the obligation of contracts" and "extinguishes the vested rights" of East Liverpool. Count IV was a facial challenge that contends that H.B. 329 violates Art. II, Section 26 because it allegedly "can never operate uniformly in all of Ohio's counties."
 {¶ 9} The complaint sought three forms of relief. First, it sought declaratory judgment declaring H.B. 329 unconstitutional. Second, it sought a prohibitory injunction prohibiting the CCBC from allocating and distributing the 2003 ULFG and ULGRAF under 2003 Alternate Formula and allowed by H.B. 329. Third, it sought a mandatory injunction ordering the CCBC to apportion the 2003 ULFG and ULGRAF according to the 1990 Alternate Formula.
 {¶ 10} On January 29, 2004, the trial court granted appellees' motion for summary judgment and dismissed appellants' claims based on four grounds. First, the trial court held that the individual taxpayers lacked standing to prosecute any challenge to the CCBC's apportionment of local government funds because they failed to establish that they suffered any individualized, direct injury as a result of the challenged conduct. Second, the trial court held that East Liverpool lacked the right to advance its constitutional claims because it could have raised the questions in a direct appeal to the Ohio Supreme Court under R.C. 5717.04, but it failed to do so. Therefore, the trial court concluded that East Liverpool was precluded by the failure to exhaust administrative remedies, statutory appeals, and res judicata from relitigating the same issues here. Third, the trial court held that Count II of the complaint "does not stand as a matter of law" because the adoption of the existing 1990 Alternate Formula (which was relied upon by the parties from 1990 through 2002 to apportion local government funds) "does not constitute a contract within the contemplation of the constitutional prohibitions against impairment." Finally, the court held that any challenges to future applications of H.B. 329 were not ripe for adjudication. This appeal followed.
 {¶ 11} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Bonacorsi v. Wheeling Lake Erie Ry.Co., 95 Ohio St.3d 314, 2002-Ohio-2220, 767 N.E.2d 707, at ¶ 24. See, also, King v. W. Res. Group (1997), 125 Ohio App.3d 1, 5,707 N.E.2d 947 (holding when a declaratory judgment action is disposed of by summary judgment our review of the trial court's resolution of legal issues is de novo). Summary judgment is properly granted when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Harless v. WillisDay Warehousing Co. (1976), 54 Ohio St.2d 64, 66, 8 O.O.3d 73,375 N.E.2d 46; Civ. R. 56(C).
 {¶ 12} "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ. R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ. R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. * * *" (Emphasis sic.)Dresher v. Burt (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264.
 {¶ 13} The "portions of the record" or evidentiary materials listed in Civ. R. 56(C) include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. The court is obligated to view all the evidentiary material in a light most favorable to the nonmoving party. Temple v. Wean United, Inc.
(1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267.
 {¶ 14} "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ. R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Dresher, 75 Ohio St.3d at 293,662 N.E.2d 264.
 {¶ 15} Summary judgment is appropriate when there is no genuine issue as to any material fact. A "material fact" depends on the substantive law of the claim being litigated. Hoyt, Inc. v. Gordon Assoc., Inc.
(1995), 104 Ohio App.3d 598, 603, 662 N.E.2d 1088, citing Andersonv. Liberty Lobby, Inc. (1986), 477 U.S. 242, 247-248, 106 S.Ct. 2505,91 L.Ed.2d 202.
 {¶ 16} Appellants' first assignment of error states:
 {¶ 17} THE TRIAL COURT ERRED WHEN IT RULED THAT THE INDIVIDUAL APPELLANTS (DELORES SATOW, KIMBERLY WOOMER AND CHRISTINA CLARK) DID NOT HAVE STANDING TO CHALLENGE THE CONSTITUTIONAL SUFFICIENCY OF H.B. 329 UNDER TRADITIONAL NOTIONS OF STANDING. (DECISION AT 4-5.)"
 {¶ 18} "It is well established that before an Ohio court can consider the merits of a legal claim, the person seeking relief must establish standing to sue." State ex rel. Ohio Academy of Trial Lawyers v. Sheward
(1999), 86 Ohio St.3d 451, 469, 715 N.E.2d 1062, citing Ohio ContractorsAssn. v. Bicking (1994), 71 Ohio St.3d 318, 320, 643 N.E.2d 1088. "In order to have standing to attack the constitutionality of a legislative enactment, the private litigant must generally show that he or she has suffered or is threatened with direct and concrete injury in a manner or degree different from that suffered by the public in general, that the law in question has caused the injury, and that the relief requested will redress the injury." Sheward, 86 Ohio St.3d at 469-470, 715 N.E.2d 1062.
 {¶ 19} The individual appellants claim standing to challenge to the constitutionality of H.B. 329 under four bases. Appellants' first three claims relate to the individual appellants role as taxpayers within East Liverpool or Columbiana County, which receives an allegedly unequal treatment under R.C. 5747.53 and 5747.63. Appellants assert that under the amended statutes, appellants have no representation in the political subdivision vote to approve or disapprove LGF and RAF apportioning methods in Columbiana County. This lack of representation allegedly creates a direct and concrete injury to appellants. Furthermore, because H.B. 329 only applies to the largest political subdivision within four of Ohio's eighty-eight counties, the public in general does not suffer this harm.
 {¶ 20} In addition, appellants claim that amended H.B. 329 caused a 17 percent reduction in East Liverpool's general fund. This decrease in funds allegedly requires East Liverpool to either cut city services or increase taxes. The individual appellants argue that the prospect of either result is a direct and concrete injury to appellants, granting standing to sue.
 {¶ 21} Here, appellants merely allege injuries that harm the public generally and have failed to adduce personal injuries caused by the statute. Appellants attempt to skirt the issue by creating a broad definition of the "general public" to include either all citizens of the state of Ohio or all citizens in Columbiana County. Appellants seem to assert that any statute that unilaterally affects a subset of those larger political subdivisions does not affect the "public generally." Thus, appellants claim that H.B. 329 injures East Liverpool, as a subset of Ohio and Columbiana County, differently than the general public. However, this characterization of the general public is uncorroborated by case law and does not consider the distinction between "public" and private harms specifically contemplated by the Supreme Court.
 {¶ 22} Here, appellants have not established that they suffered any direct and concrete injury as a result of the application of H.B. 329 in Columbiana County. It is important to note that "[i]t is not enough that the party assailing the act suffers in some indefinite way in common with people generally." State ex rel. Lynch v. Rhodes (1964), 176 Ohio St. 251,254, 27 O.O.2d 155, 199 N.E.2d 393. Additionally, the taxpayer must demonstrate that they have "some special interest therein by reason of which his own property rights are placed in jeopardy." State ex rel.Masterson v. Ohio State Racing Commn. (1954), 162 Ohio St. 366,55 O.O. 215, 123 N.E.2d 1, paragraph one of the syllabus.
 {¶ 23} Accordingly, appellant's first assignment of error is without merit.
 {¶ 24} Appellants' second assignment of error states:
 {¶ 25} "THE TRIAL COURT ERRED WHEN IT RULED THAT THE INDIVIDUAL APPELLANTS DID NOT HAVE STANDING TO CHALLENGE THE CONSTITUTIONAL SUFFICIENCY OF H.B. 329 UNDER THE `ENFORCEMENT OF PUBLIC RIGHT DOCTRINE' OF STANDING. (DECISION AT 4-5.)"
 {¶ 26} Referring to this concept of public right or public action, the Ohio Supreme Court explained, "[w]here a public right, as distinguished from a purely private right, is involved, a citizen need not show any special interest therein, but he may maintain a proper action predicated on his citizenship relation to such public right. This doctrine has been steadily adhered to by this court over the years." State ex rel. OhioAcademy of Trial Lawyers v. Sheward (1999), 86 Ohio St.3d 451, 473,715 N.E.2d 1062, quoting State ex rel. Newell v. Brown (1954),162 Ohio St. 147, 150-151, 54 O.O. 392, 122 N.E.2d 105. However, this exception to standing is very narrow and limited, and does not give a citizen the right to challenge the constitutionality of legislative enactments in all cases. The court opined as much in Sheward when it stated as follows:
 {¶ 27} "We have not proposed, as the dissent suggests, that our citizens have standing as such to challenge the constitutionality of every legislative enactment that allegedly violates the doctrine of separation of powers or exceeds legislative authority. We have expressed quite clearly in our preamble to the issue of relators' standing that this court will entertain a public action only `in the rare andextraordinary case' where the challenged statute operates, `directly andbroadly, to divest the courts of judicial power.' (Emphasis added.) We will not entertain a public action to review the constitutionality of a legislative enactment unless it is of a magnitude and scope comparable to that of Am. Sub. H.B. No. 350." (Emphasis sic.) Sheward,86 Ohio St.3d at 503-504, 715 N.E.2d 1062.
 {¶ 28} Here, appellants do not seek to enforce a current public duty. Nevertheless, appellants claim that the public duty they seek to enforce is allocation of ULGF and ULGRAF funds through the methods prescribed in the pre-H.B. 329 version of R.C. 5747.53 and R.C. 5747.63. These statutes were superseded by H.B. 329 and no longer place an affirmative duty on the CCBC. Indeed, the CCBC, by following the tenets of current R.C. 5747.53
and 5747.63, as amended by H.B. 329, fulfilled their public duty of allocating LGF and RAF funds. Additionally, in Sheward, it was evident to the Court that the tort reform sought by the General Assembly with the passage of Am. Sub. H.B. No. 350 directly and broadly usurped the courts of judicial power. Here, appellants have failed to demonstrate that H.B. 329 operates to directly and broadly divest the courts of judicial power and is not of a magnitude and scope comparable to that of Am. Sub. H.B. 350. Indeed, there is no evidence to suggest that H.B. 329 divests the courts of any power whatsoever. H.B. 329 simply altered the calculation of ULGF and ULGRAF funds. The courts still have the same role and powers in an appeal from and review of those allocations.
 {¶ 29} Accordingly, appellants' second of assignment of error is without merit.
 {¶ 30} Appellants' third, fourth, and fifth assignments of error will be addressed together. They state, respectively:
 {¶ 31} "THE TRIAL COURT ERRED WHEN IT RULED THAT APPELLANT CITY OF EAST LIVERPOOL `FAILED TO EXHAUST ITS AVAILABLE, STATUTORILY AUTHORIZED ADMINISTRATIVE REMEDIES' FOR CHALLENGING THE CONSTITUTIONAL SUFFICIENCY OF H.B. 329. (DECISION AT 5-6.)"
 {¶ 32} "THE TRIAL COURT ERRED WHEN IT RULED THAT APPELLANT CITY OF EAST LIVERPOOL WAS BARRED BY THE DOCTRINE OF RES JUDICATA FROM MAINTAINING A DECLARATORY JUDGMENT ACTION IN COMMON PLEAS COURT. (DECISION AT 7-8.)"
 {¶ 33} "THE TRIAL COURT ERRED WHEN IT FAILED TO RULE THAT APPELLEES WERE BARRED BY THE DOCTRINE OF RES JUDICATA FROM RELITIGATING THE ISSUE OF APPELLANTS' LEGAL REMEDY TO CHALLENGE THE CONSTITUTIONAL SUFFICIENCY OF H.B. 329."
 {¶ 34} Appellants argue that the administrative review procedure set forth in the statutes does not adequately provide an opportunity to present constitutional challenges to legislation. Appellees argue that constitutional challenges to H.B. 329 should be pursued directly to the Ohio Supreme Court under R.C. 5717.04.
 {¶ 35} If a political subdivision wants to appeal an adverse decision by a county budget commission, the appellate procedure begins with R.C. 5705.37 which states in part, "The taxing authority of any subdivision that is dissatisfied with any action of the county budget commission may, through its fiscal officer, appeal to the board of tax appeals within thirty days after the receipt by the subdivision of the official certificate or notice of the commission's action."
 {¶ 36} The political subdivision can then seek judicial review with the Ohio Supreme Court or the court of appeals as was done here. See E.Liverpool v. Columbiana Cty. Budget Comm., 105 Ohio St.3d 410,2005-Ohio-2283, 827 N.E.2d 310. R.C. 5717.04 provides, in part:
 {¶ 37} "The proceeding to obtain a reversal, vacation, or modification of a decision of the board of tax appeals shall be by appeal to the supreme court or the court of appeals for the county in which the property taxed is situate[d] or in which the taxpayer resides. * * *
 {¶ 38} "* * *
 {¶ 39} "Such appeals shall be taken within thirty days after the date of the entry of the decision of the board on the journal of its proceedings, as provided by such section, by the filing by appellant of a notice of appeal with the court to which the appeal is taken and the board. * * * The court in which notice of appeal is first filed shall have exclusive jurisdiction of the appeal."
 {¶ 40} Although the BTA, as an administrative body, does not have the authority to pass on the constitutionality of particular legislation, the Ohio Supreme Court has held that the "question of whether a tax statute is unconstitutional on its face may be raised initially in the Supreme Court or the courts of appeal" upon a direct appeal from the BTA under R.C. Chapter 5717, even if not previously raised before the BTA.Cleveland Gear Co. v. Limbach (1988), 35 Ohio St.3d 229, 520 N.E.2d 188, paragraph two of the syllabus. Additionally, the Court has also held that the "question of whether a tax statute is unconstitutional when applied to a particular state of facts must be raised in the notice of appeal to the Board of Tax Appeals, and the Board of Tax Appeals must receive evidence concerning this question if presented, even though the Board of Tax Appeals may not declare the statute unconstitutional." Id. at paragraph three of the syllabus.
 {¶ 41} Therefore, East Liverpool had at its disposal a system of administrative and judicial review to challenge the constitutionality of H.B. 329. However, when it appealed the 2003 Alternate Formula to the BTA and then to the Ohio Supreme Court, it did not present those challenges. The doctrine of claim preclusion provides that an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were or might have been litigated in a first lawsuit. Gravav. Parkman Twp. (1995), 73 Ohio St.3d 379, 382, 653 N.E.2d 226. Consequently, res judicata operated to bar appellants from subsequently pursuing those claims in Columbiana County Common Pleas Court.
 {¶ 42} Accordingly, appellants' third, fourth, and fifth assignments of error are without merit.
 {¶ 43} Appellants' sixth assignment of error states:
 {¶ 44} "THE TRIAL COURT ERRED WHEN IT RULED THAT A SETTLEMENT AGREEMENT BETWEEN EAST LIVERPOOL AND THE NECESSARY POLITICAL SUBDIVISIONS WAS NOT A CONTRACT. (DECISION AT 8.)"
 {¶ 45} Appellants argue that the 1990 Alternate Formula constituted a contract. As such, appellants maintain that the trial court's decision acted as impairment of that contract under Article II, Section 28 of the Ohio Constitution and Article I, Section 10 of the Unites States Constitution.
 {¶ 46} The Ohio Supreme Court has declined to apply contract law to the adoption of an alternate method by the various governmental units.Andover Twp. v. Ashtabula Cty. Budget Comm. (1977), 49 Ohio St.2d 171,3 O.O.3d 238, 360 N.E.2d 690. See, also, Reynoldsburg v. Licking Cty.Budget Comm., 104 Ohio St.3d 453, 2004-Ohio-6773, 820 N.E.2d 323. Therefore, in this instance, the 1990 Alternate Formula did not constitute a contract.
 {¶ 47} Accordingly, appellants' sixth assignment of error is without merit.
 {¶ 48} Appellants' seventh assignment of error states:
 {¶ 49} "THE TRIAL COURT ERRED WHEN IT RULED THAT IT WAS WITHOUT AUTHORITY TO ENJOIN FUTURE APPLICATIONS OF H.B. 329. (DECISION AT 8.)"
 {¶ 50} Appellants argue that if H.B. 329 is determined to be unconstitutional, it is incapable of ever being applied in a constitutional manner. Therefore, appellant's conclude, the trial court has the authority to enjoin its application in future years as well.
 {¶ 51} As noted by the trial court, the CCBC's decision to adopt the alternative apportionment method is an annual decision. The CCBC may not decide to adopt the alternative method of apportionment in the future, and thus, it would be mere speculation to enjoin future apportionment decisions. As a general rule, premature declarations of issues not in actual controversy are considered mere advisory opinions, which is an improper exercise of judicial authority. Fortner v. Thomas (1970),22 Ohio St.2d 13, 14; 51 O.O.2d 35, 257 N.E.2d 371. The extension of this principle includes administrative or quasi-legislative proceedings of administrative officers and agencies. Id.
 {¶ 52} Accordingly, appellants' seventh assignment of error is without merit.
 {¶ 53} The judgment of the trial court is hereby affirmed.
Vukovich, J., concurs.
Waite, J., concurs.
[1] The named plaintiffs-appellants are the City of East Liverpool, including its mayor, auditor, and treasurer, Delores E. Satow, Kimberly K. Woomer, and Christina A. Clark, respectively.
[2] The named defendants-appellees are: the Columbiana County Budget Commission; the Columbiana County Auditor, Nancy Clause-Milliken; the Columbiana County Treasurer, Linda T. Bolon; Columbiana County; the Columbiana County Park District; the townships of Butler, Center, Elkrun, Fairfield, Franklin, Hanover, Knox, Liverpool, Madison, Middleton, Perry, Salem, St. Clair, Unity, Washington, Wayne, West, and Yellow Creek; the villages of Columbiana, Hanoverton, Leetonia, Lisbon, New Waterford, Rogers, Salineville, Summitville, Washingtonville, and Wellsville; and the cities of East Palestine and Salem.
[3] Large portions of the underlying pertinent facts recited herein are taken from a joint statement of stipulated facts filed in the trial court by all of the parties on November 17, 2003.