CITY OF EAST LIVERPOOL, APPELLANT, *v.* COLUMBIANA
COUNTY BUDGET COMMISSION ET AL., APPELLEES.

[Cite as *E. Liverpool v. Columbiana Cty. Budget
Comm.,* 114 Ohio St.3d 133, 2007-Ohio-3759.]

(No. 2006–1129—Submitted April 4, 2007—Decided August 8, 2007.)

---

LUNDBERG STRATTON, J.

{¶ 1} The city of East Liverpool challenges the constitutionality of 2002 Sub.H.B. No. 329 ("H.B. 329"), which changed the procedures by which certain counties, including Columbiana County, may adopt an "alternative method" of apportioning the county's Undivided Local Government Fund ("ULGF") and the Undivided Local Government Revenue Assistance Fund ("ULGRAF") among the political subdivisions of the county. 149 Ohio Laws, Part IV, 7881.

{¶ 2} Because we hold that the H.B. 329 amendments do not violate the constitutional guarantees of uniformity and equal protection and the prohibition against retroactive legislation, we affirm the decision of the Board of Tax Appeals ("BTA").

### Factual Background and Procedural History

{¶ 3} In 2002, the General Assembly passed H.B. 329, which amended R.C. 5747.53 and 5747.63 to allow ULGF and ULGRAF money to be distributed among subdivisions under an alternative apportionment scheme without the approval of the largest municipal corporation in the county. 149 Ohio Laws, Part IV, at 7884, 7887. In Columbiana County, the political subdivisions utilized the H.B. 329 procedures and adopted a new method of apportioning ULGF and the ULGRAF money for the distribution years 2003, 2004, 2005, and 2006.

{¶ 4} East Liverpool challenged the budget commission's August 2002 apportionment of funds for 2003. We upheld the apportionment and affirmed the BTA's decision in *E. Liverpool v. Columbiana Cty. Budget Comm.*, 105 Ohio St.3d 410, 2005-Ohio-2283, 827 N.E.2d 310.

{¶ 5} Thereafter, East Liverpool also appealed from the budget commission's apportionment for the years 2004 through 2006 based on the same alternative formula. The BTA affirmed the apportionment but declined to consider East Liverpool's constitutional claims as beyond the scope of its jurisdiction.

{¶ 6} In this appeal, East Liverpool asserts that H.B. 329 on its face violates the Uniform-Operation and Retroactivity Clauses of the Ohio Constitution and the Equal Protection Clauses of the Ohio and United States Constitutions.

{¶ 7} Beginning with the 2003 distribution year, the results from apportioning ULGF and ULGRAF by the alternative formula in Columbiana County differed significantly from those of preceding years. Under earlier apportionment procedures, East Liverpool had received 26.9 percent of the funds each year pursuant to a 1990 agreement among political subdivisions, even though the city constitutes only about 12 percent of the county's population. See *Columbiana Cty. Park Dist. v. Columbiana Cty. Budget Comm.* (Dec. 19, 1994), B.T.A. No. 93–D–1174, 1994 WL 1711193.

{¶ 8} Application of H.B. 329 changed that outcome. The new alternative method of apportionment has reduced East Liverpool's share of the local government funds to between five percent and six percent of the ULGF and ULGRAF during each of the distribution years at issue.

{¶ 9} Each year, at least 24 out of the 31 townships and municipalities in Columbiana County, excluding East Liverpool, approved the new method of apportionment. Moreover, those subdivisions represented at least 74 percent of all the county's residents.

### H.B. 329 Amendments to R.C. 5747.53 and 5747.63

{¶ 10} Ohio law mandates that a specified portion of various state taxes be placed in a "local government fund" and a "local government revenue assistance fund." R.C. 5747.03(A)(1) and 5747.61(B). The Tax Commissioner distributes

the funds to county treasurers, who credit the funds to the ULGF and the ULGRAF of each county, to be apportioned among the county's political subdivisions. R.C. 5747.50, 5747.501, 5747.51, and 5747.61.

{¶ 11} There are two methods of apportioning these funds: a "statutory" method based on the relative need of each political subdivision, and an "alternative method or formula." R.C. 5747.51, 5747.62, 5747.53, and 5747.63. Prior to H.B. 329, in order to use the alternative method, the county had to obtain approval of the county commissioners, the legislative body of the most populous (hereinafter "largest") city in the county,[1] and a majority of the other political subdivisions in the county. 1991 Am.Sub.H.B. No. 298, 144 Ohio Laws, Part III, 3987, 4474, and 1989 Am.Sub.H.B. No. 111, 143 Ohio Laws, Part II, 2331, 2636–2637. See *E. Liverpool v. Columbiana Cty. Budget Comm.* (2000), 90 Ohio St.3d 269, 270, 737 N.E.2d 44.

{¶ 12} H.B. 329 changed the law by permitting certain counties to adopt an alternative method of apportionment without the largest city's approval. R.C. 5747.53(C) and 5747.63(C) provide that "two or more participating political subdivisions" that together have the "majority of the [county's] total population" may pass resolutions "to exclude the approval otherwise required" of the county's largest city in order to adopt an alternative method of apportionment. The county commissioners, along with a majority of the legislative authorities in the county "other than" those in the largest city, may then adopt the alternative method.

{¶ 13} Pursuant to these provisions, certain political subdivisions of Columbiana County initially passed resolutions to "exclude the approval" of East Liverpool and then passed resolutions approving a new method of apportionment. In this appeal, East Liverpool's constitutional challenges focus not on its exclusion, but rather on the fact that once excluded, it was not permitted to vote on the adoption of the alternative method. Under H.B. 329, once the other political subdivisions exclude the largest city, that city has no voice in whether the new method is ultimately adopted. East Liverpool argues that this feature of the statute is facially unconstitutional. We conclude that contrary to East Liverpool's contentions, the statute is not unconstitutional on its face.[2]

---

1. We use the term "largest city" as shorthand for the somewhat more complex term in the statute, "largest municipal corporation in the county," which arises primarily from the fact that large cities sometimes include territory in more than one county, an issue not material to this case.

2. Appellees suggest that our review is precluded by *Satow v. Columbiana Cty. Budget Comm.*, Columbiana App. No. 04–CO–13, 2005-Ohio-5312, 2005 WL 2450165, appeal not accepted, 108 Ohio St.3d 1475, 2006-Ohio-665, 842 N.E.2d 1054. *Satow* did not consider the constitutional issues that East Liverpool now asserts.

## H.B. 329 Does Not Violate the Constitutional
## Requirement of Uniform Operation

{¶ 14} "All laws, of a general nature, shall have a uniform operation throughout the state." Section 26, Article II of the Ohio Constitution. East Liverpool contends that the new procedure for adopting an alternative method of apportionment violates the Uniformity Clause because it is limited to "counties in which [the largest city] has a population of twenty thousand or less and a population that is less than fifteen per cent of the total population of the county." R.C. 5747.53(C) and 5747.63(C). According to East Liverpool, this geographic limitation transforms H.B. 329 into a special law on a general subject matter.

{¶ 15} This argument fails because the Uniformity Clause prohibits arbitrary geographic distinctions, not reasonable measures that have a geographic element or disparate geographic effect. See *State ex rel. Zupancic v. Limbach* (1991), 58 Ohio St.3d 130, 568 N.E.2d 1206, paragraph one of the syllabus (if statute has disparate geographic results but "achieves a legitimate governmental purpose and operates equally on all persons or entities included within its provisions," it satisfies the Uniformity Clause); *Austintown Twp. Bd. of Trustees v. Tracy* (1996), 76 Ohio St.3d 353, 357, 667 N.E.2d 1174. Limiting the exclusion provision to certain counties based on population represents a rational balancing of political subdivision interests. In large counties where the largest city contains a high percentage of the county's inhabitants, the approval of the largest city is necessary to adopt an alternative method under current law. Otherwise, several smaller subdivisions that represent only a small fraction of the county's population could determine the method of apportionment. By contrast, the General Assembly could rationally conclude that in a small county in which few of the cities are of similar size, the interests of the largest city should not weigh more heavily than those of other political subdivisions in the county.

{¶ 16} Moreover, a statute may set forth criteria that limit the statute's operation to a few counties, so long as "there are no limitations or restrictions that prevent other [geographic areas] from qualifying in the future." *Kelleys Island Caddy Shack, Inc. v. Zaino*, 96 Ohio St.3d 375, 2002-Ohio-4930, 775 N.E.2d 489, ¶ 17. The population thresholds of H.B. 329 are "open ended," and any county may qualify under those thresholds "given a sufficient change in circumstances." Id. at ¶ 19.

{¶ 17} East Liverpool also argues that even if it is rational to exclude the *necessity* for the largest city's approval, it is irrational to exclude the largest city from *voting* on approval of the new method. This argument does not state an objection that is cognizable under the Uniformity Clause, because it does not relate to whether H.B. 329 is valid "general" legislation as opposed to improper "special" or "local" legislation. The contention that a county's largest city must

have the same opportunity as other subdivisions to participate in adopting an alternative method does not, by itself, involve the kind of limitation that implicates the Uniformity Clause's prohibition against special or local laws.

{¶ 18} At oral argument, counsel for East Liverpool also contended that an arbitrary classification in a special law is an unconstitutional violation of the Uniformity Clause. He asserted that "when a law uses a population threshold, that is the fingerprint of a special law," while conceding that a "special law is not per se invalid under the Uniformity Clause." We find no support for East Liverpool's approach. As previously stated, H.B. 329 is a general law, and case law establishes that it has the requisite uniform operation throughout the state. *Hixson v. Burson* (1896), 54 Ohio St. 470, 482, 43 N.E. 1000.

{¶ 19} Under Section 26, Article II of the Ohio Constitution, the General Assembly may pass a law that does not operate uniformly only if it is not a law "of a general nature." In this case, H.B. 329 plainly constitutes a law "of a general nature" because it addresses a "subject that does or may exist in, and affect the people of, every county in the state." *Hixson,* 54 Ohio St. at 481, 43 N.E. 1000. Because the population threshold in H.B. 329 bears a substantial relationship to the purpose of excluding the necessity for the largest city's approval, we hold that H.B. 329 operates uniformly and satisfies the mandate of the Uniformity Clause.

### H.B. 329 Does Not Facially Violate the Guarantee of Equal Protection

{¶ 20} East Liverpool also argues that H.B. 329 violates the Equal Protection Clauses by depriving the largest city in certain counties of any voice in whether a new alternative method is adopted. We have held that ordinarily, "[a] political subdivision * * * receive[s] no protection from the Equal Protection or Due Process Clauses vis-a-vis its creating state." *Avon Lake City School Dist. v. Limbach* (1988), 35 Ohio St.3d 118, 122, 518 N.E.2d 1190. But East Liverpool is not advancing equal protection rights for itself. Rather, it is asserting the equal protection rights of its citizens and council members. This claim raises the threshold issue of East Liverpool's standing to assert the rights of third parties.

### A. Standing

{¶ 21} In general, a political subdivision lacks standing to assert the rights of a third party. In *State ex rel. Harrell v. Streetsboro City School Dist. Bd. of Edn.* (1989), 46 Ohio St.3d 55, 63, 544 N.E.2d 924, we held that a school board lacked standing to raise on behalf of certain electors an equal protection challenge to statutes that prescribed procedures for transferring territory from one school district to another. We reasoned that because the school district "is not a member of the class [i.e., the "qualified electors"] it identifies, it lacks standing to attack the statute's constitutionality on the ground that it violates others' rights

to equal protection." Id. at 63, 544 N.E.2d 924. In *Bernardini v. Conneaut Area City School Dist. Bd. of Edn.* (1979), 58 Ohio St.2d 1, 3, 12 O.O.3d 1, 387 N.E.2d 1222, fn. 1, we similarly denied standing to a school district trying to assert the equal protection rights of third parties. We held that the school board was "not within the class allegedly discriminated against, [so] it lacks standing" to challenge the statute. Id.

{¶ 22} Nevertheless, we acknowledge that federal courts have recognized exceptions to this general rule when a claimant (i) suffers its own injury in fact, (ii) possesses a sufficiently " 'close' relationship with the person who possesses the right," and (iii) shows some "hindrance" that stands in the way of the claimant seeking relief. *Kowalski v. Tesmer* (2004), 543 U.S. 125, 129–130, 125 S.Ct. 564, 160 L.Ed.2d 519. Given the nature of the equal protection claim in this case, East Liverpool satisfies these criteria.

{¶ 23} First, East Liverpool suffers a direct injury to its own treasury. Indeed, the equal protection interest of East Liverpool's citizens concerns their interest in the city's treasury: if East Liverpool is deprived of its voice in determining the nature of the alternative method of apportionment, the city may have less money to furnish services to its citizens. The injury claimed by East Liverpool is intertwined with the injury claimed by its citizens.

{¶ 24} Second, there is a close relationship between East Liverpool and its citizens with respect to the equal protection claim. The city and its citizens have an interdependent interest in the city's treasury.

{¶ 25} Third, efforts by East Liverpool's citizens to assert their own claims have been hindered. Certain individual citizen/taxpayers of East Liverpool already tried to assert an equal protection claim, only to have it denied for lack of standing. *Satow v. Columbiana Cty. Budget Comm.*, Columbiana App. No. 04–CO–13, 2005-Ohio-5312, 2005 WL 2450165, ¶ 8, 20–22. Specifically, the Seventh District Court of Appeals in *Satow* concluded that individual citizens of East Liverpool "merely allege injuries that harm the public generally and have failed to adduce personal injuries caused by the statute." Id. at ¶ 21. Therefore, we believe that East Liverpool is the appropriate claimant under these circumstances to assert the equal protection claim on behalf of its citizens. See *Craig v. Boren* (1976), 429 U.S. 190, 197, 97 S.Ct. 451, 50 L.Ed.2d 397. See, also, *Cincinnati City School Dist. v. State Bd. of Edn.* (1996), 113 Ohio App.3d 305, 314, 680 N.E.2d 1061 (permitting school district to challenge territory transfer based on equal protection rights of students); *Washington v. Seattle School Dist. No. 1* (1982), 458 U.S. 457, 102 S.Ct. 3187, 73 L.Ed.2d 896 (school district successfully challenged state ballot initiative as violating equal protection rights of students).

{¶ 26} Finally, East Liverpool has statutory authority to represent and act on behalf of its citizens in connection with budget-commission and BTA proceedings.

R.C. 5705.37 and 5747.55. We read this statutory authorization to extend to constitutional claims that are based on rights of its citizens if those rights are "closely related" to the city's own interests.

## B. Equal Protection

{¶ 27} East Liverpool asserts that H.B. 329 on its face violates the Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and Section 2, Article I of the Ohio Constitution because the distinction between the largest city and other subdivisions does not constitute a rational classification. In particular, East Liverpool contends that both federal and state constitutions require that the largest city be counted in determining whether a majority of subdivisions has approved the new alternative method.[3] East Liverpool's arguments appear to parse the H.B. 329 amendments into two separate provisions: the abolition of the largest city's "veto" power, and the total disregard of the vote of the largest city against the proposed alternative method after the exclusion has occurred. However, these two portions of the H.B. 329 amendments are intimately connected and serve a rational objective when considered in context. See *Fitzgerald v. Racing Assn. of Cent. Iowa* (2003), 539 U.S. 103, 108, 123 S.Ct. 2156, 156 L.Ed.2d 97 (provision held rational when legislation "seen as a whole").

{¶ 28} Indeed, the present case validates the General Assembly's rationale for countywide consensus. In each of the years at issue, the exclusion vote strongly paralleled the adoption vote. During those years, the votes reflected the will of at least 74 percent of the county's entire population. Furthermore, East Liverpool cannot complain of unfairness in the substance of the distribution formula, for it receives a share of the funds proportionate to its share of the county's population and is thereby treated equally with other subdivisions.

{¶ 29} Finally, it is significant that H.B. 329 requires annual approval if a county adopts an alternative method over the largest city's objections. R.C. 5747.53(C) and 5747.63(C). As a result, the largest city has the opportunity each year to enter meaningful discussions with other subdivisions and thereby participate in developing an alternative method of apportionment agreeable to other subdivisions.

---

3. In its brief, East Liverpool states that there is a "colorable claim that H.B. 329 should be subject to strict scrutiny because it creates a statutory classification which adversely affects the fundamental right to vote." However, East Liverpool then argues that H.B. 329 fails *under the rational-basis test*. In this case, the citizens do not vote on a method of apportionment; rather, this case involves the citizens' generalized interest in receiving the benefits of government funds. Therefore, the rational-basis test is appropriate in this context. See *San Antonio Indep. School Dist. v. Rodriguez* (1973), 411 U.S. 1, 40, 93 S.Ct. 1278, 36 L.Ed.2d 16; accord *Cincinnati City School Dist. Bd. of Edn. v. Walter* (1979), 58 Ohio St.2d 368, 375–376, 12 O.O.3d 327, 390 N.E.2d 813.

{¶ 30} East Liverpool's facial challenge to H.B. 329 cannot succeed unless it "establish[es] that there exists no set of circumstances under which the statute would be valid." *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 37, citing *United States v. Salerno* (1987), 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697. We have determined that the statute may be rationally and constitutionally applied in this case; therefore, we deny East Liverpool's facial challenge.

## H.B. 329 Has No Unconstitutionally Retroactive Effect

{¶ 31} Section 28, Article II of the Ohio Constitution mandates that the General Assembly shall possess "no power to pass retroactive laws." East Liverpool asserts that H.B. 329 violates this provision, but this claim fails because the statute has no retroactive effect in this case. We have held that when the application of a statute to the case before us involves only a prospective operation, we will not entertain a retroactivity claim under Section 28, Article II. *State v. Hawkins* (1999), 87 Ohio St.3d 311, 314, 720 N.E.2d 521. That doctrine bars East Liverpool's retroactivity claim.

{¶ 32} East Liverpool relies on an uncodified section of H.B. 329 that permitted application of the H.B. 329 amendments to the 2003 distribution year. Even if we assume that this legislation constituted retroactivity for constitutional purposes, that distribution year is not before us. We address only years 2004, 2005, and 2006 in this appeal. Thus, the statute operates only prospectively in this case.

{¶ 33} East Liverpool also contends that the statute "permitted the retrospective extinguishment of East Liverpool's * * * preexisting legal right under former R.C. 5747.53 and 5747.63 to vote to repeal the preexisting alternate formula and to participate in the vote of political subdivisions to approve an alternate formula." However, no one has a vested right in having the law remain the same over time. If by "rely[ing] on existing law in arranging his affairs, [a citizen] were made secure against any change in legal rules, the whole body of our law would be ossified forever." *State ex rel. Horvath v. State Teachers Retirement Bd.* (1998), 83 Ohio St.3d 67, 72, 697 N.E.2d 644, citing Fuller, The Morality of Law (1964) 60. We distinguish vested "rights" from a mere "privilege" conferred by statute "which could be exercised so long as the statute remained in effect." *State ex rel. Core v. Green* (1953), 160 Ohio St. 175, 181, 51 O.O. 442, 115 N.E.2d 157. East Liverpool's former controlling vote on alternative apportionment in Columbiana County was a privilege that the legislature validly modified through the enactment of H.B. 329.

{¶ 34} For these reasons, we reject the retroactivity claim.

## Conclusion

{¶ 35} Because we hold that the H.B. 329 amendments do not facially violate the federal or state constitutions, we affirm the decision of the BTA.

Decision affirmed.

O'CONNOR, O'DONNELL, LANZINGER and CUPP, JJ., concur.

PFEIFER, J., concurs in judgment only.

MOYER, C.J., dissents.

---

Vorys, Sater, Seymour & Pease L.L.P., John Kulewicz, and John Varanese, for appellant.

Roetzel & Andress and Stephen W. Funk, for appellees Columbiana County, Butler Township, Center Township, Elkrun Township, Fairfield Township, Franklin Township, Hanover Township, Knox Township, Liverpool Township, Madison Township, Middleton Township, Perry Township, Salem Township, St. Clair Township, Unity Township, Washington Township, Wayne Township, West Township, Yellow Creek Township.

Robert L. Herron, Columbiana County Prosecuting Attorney, Andrew A. Beech, Assistant Prosecuting Attorney, for appellee Columbiana County Budget Commission.